508 So.2d 1077 (1987)
McSweyn SHATTUCK & Fred W. Pathmann, Sr., Executors of the Estate of Ruth McSweyn Tyson, Executrix
v.
ESTATE OF R.A. TYSON.
No. 56906.
Supreme Court of Mississippi.
May 20, 1987.
Orma R. Smith, Jr., Smith, Ross & Trapp, Corinth, for appellant.
T.H. Freeland, III, T.H. Freeland, IV, Freeland & Freeland, Oxford, for appellee.
Before WALKER, C.J., and DAN M. LEE and PRATHER, JJ.
*1078 PRATHER, Justice, for the Court:
Co-executors of the estate of Ruth McSweyn Tyson brought this action to renounce the last will and testament of Ruth's husband, Robert Alexander Tyson, whose will was probated in 1953. In the Chancery Court of Marshall County, the chancellor granted summary judgment in favor of the estate of R.A. Tyson. The co-executors perfect this appeal and assign the granting of summary judgment as their only error. This Court affirms.

I.
Rule 56(b) of the Mississippi Rules of Civil Procedure provides, "A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in his favor as to all or any part thereof."
Rule 56 allows summary judgment where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Brocato v. Mississippi Publishers Corp., 503 So.2d 241, 243 (Miss. 1987); Modling v. Bailey Homes & Insurance, 490 So.2d 887, 891 (Miss. 1986); Brown v. Credit Center Inc., 444 So.2d 358, 362 (Miss. 1983). The facts of the instant case are not disputed.

II.
In 1951, Robert Alexander Tyson (Robert) married his third wife, Ruth McSweyn (Ruth). Robert was 64 years old and Ruth was 43. Robert's daughter from a previous marriage, Harriet, was 7 years old. The family resided in Robert's home in Holly Springs, Mississippi.
On February 26, 1953, Robert entered a hospital in Florence, Alabama for surgery. While hospitalized, Robert was visited by his attorney, Glenn Fant, and J.F. Daniels, now deceased. At Robert's request, Fant drew a last will and testament for Robert and one for Ruth. Robert's will provided in part:
Well knowing that my beloved wife will adequately care for my daughter Harriet Tyson and make provisions for her, by this expression not creating any trust, charge, or other restraint, I give devise and bequeath to my beloved wife, Ruth McSweyn Tyson all my property of every nature and wherever situated, To her own use for ever in fee simple.
Ruth's will provided in part:
I give devise and bequeath all property which was devised and bequeathed to me by my beloved husband Robert A. Tyson to the daughter of the said Robert A. Tyson whether I shall have lawfully adopted her as now is my intention as my own daughter or not, Harriet Tyson to her own use for ever in fee simple.[1]
Before the wills were executed, Ruth made an oral promise to Robert that she would devise and bequeath to Harriet all the remaining property she received from Robert's estate. Ruth's oral promise was witnessed by Fant and Daniels. Afterward, the wills were executed contemporaneously.
Robert died May 22, 1953 and his will was probated in the Chancery Court of Marshall County, Mississippi. Ruth was executrix and sole legatee and devisee. Robert's estate included real property in Marshall County, an antebellum home, valuable furnishings, stock in the Bank of Holly Springs, and other valuable property.
Sometime after the execution of Ruth's 1953 will, an error was discovered in the attestation clause. The error was corrected by Ruth's execution of another will dated July 30, 1954. Between the execution of her first and second wills, Ruth adopted Robert's daughter, Harriet.[2]
During the years that followed, Harriet and Ruth became estranged from one another. In 1965, Ruth executed a new will, revoking her former wills. In her 1965 will, Ruth devised and bequeathed the Robert *1079 Tyson property to co-trustees of a testamentary trust. Under the testamentary trust, Harriet was to receive one-half the income derived from her father's property while Kathryn McSweyn Smallwood, Ruth's sister, was to receive the other half.
The 1965 testamentary trust was to terminate upon the death of Harriet and the trust corpus and all accumulations were to vest in Ruth's sister, if living, Ruth's brother, if living, or Ruth's nephew and niece.
In 1973, Harriet's attorney wrote to Ruth seeking assurance that Ruth intended to adhere to the oral promise she made Robert in 1953. In response, Ruth wrote:
Glenn [Fant] recalls, and I join in Glenn's recollection, that when your father made his will he had discussed it with Glenn, and he knew, and I told him, that all that I owned which I received from your father would go to you at the time of my death.
Your father's will did not create any trust and this letter is not intended to say that you have any present right to any of the property which I received from your father but it is to say I will leave what I have of it at the time of my death to you.
Ruth McSweyn Tyson died October 24, 1983 and her 1965 will and codicils thereto were entered for probate. Dissatisfied with the provisions made for her in Ruth's will, Harriet filed suit in the Chancery Court of Marshall County to impose a constructive trust[3] for her use and benefit on all the real and personal property in Ruth's estate which had been owned by Robert at the time of his death. Her theory was grounded on Ruth's oral promise to Robert made 31 years earlier.
The only living witness to the events surrounding Ruth's oral promise was Glenn Fant, who had in the interim acquired the office of Chancellor of the Eighteenth Chancery Court District of Mississippi. Judge Fant's testimony was favorable to Harriet's position.
An opinion was rendered February 18, 1985, in which the chancellor imposed a constructive trust on all the assets owned by Ruth's estate which had been inherited from Robert. A decree establishing the trust was entered March 6, 1985. No appeal was taken from the imposition of the constructive trust because Ruth's executors feared the 15 percent penalty for unsuccessful appeals. See, Miss. Code Ann. § 11-3-23 (Supp. 1986). Therefore, the decree imposing the constructive trust is final and is not a subject of review on this appeal.
On April 5, 1985, the co-executors of Ruth's estate, McSweyn Stattuck and Fred W. Pathmann, filed a renunciation of the will of Robert Tyson. They also filed a complaint making Harriet a defendant to the proceeding. In that complaint, the co-executors renounced the provisions made for Ruth by the will of Robert, claiming that when the constructive trust was imposed on all assets owned by Robert at the time of his death, it eliminated Ruth's right to dispose of the assets of the estate by her last will and testament. The effect of the final decree, according to the co-executors, was that Ruth did not take the property in fee simple absolute, but took the property for life, subject to the right to consume the assets during her lifetime. The co-executors concluded that the will as modified by the imposition of the constructive trust contained no provisions for Ruth as of the date the constructive trust was imposed.
The theories of the co-executors in renouncing the will were that (a) the will of Robert as construed by the suit to impose the constructive trust, at the time it was done, resulted in the will containing provisions that were unsatisfactory to Ruth and that she had a right to renounce the will in accordance with Miss. Code Ann. § 91-5-25 (Supp. 1986); and (b) that the decree establishing the constructive trust resulted in *1080 the will making no provision for Ruth and was, therefore, automatically renounced by operation of law as provided for by Miss. Code Ann. § 91-5-27 (1972).
On these facts, the chancellor held the estate of Robert Tyson was entitled to judgment as a matter of law for two reasons:
(1) The testator's will was not renounced within the statute of limitations; and
(2) The right to renounce her husband's will was a personal right of Ruth and did not survive her.

III.

Is the statutory right given to a surviving spouse to renounce the will of the deceased a personal privilege, or may it be exercised by the administrator of the surviving spouse's estate when that spouse dies?
Miss. Code Ann. § 91-5-25 (Supp. 1986) allows a surviving spouse to renounce the will of the deceased spouse as follows:
When a husband makes his last will and testament and does not make satisfactory provision therein for his wife, she may, at any time within ninety (90) days after the probate of the will, file in the office where probated a renunciation... . Thereupon she shall be entitled to such part of his estate, real and personal, as she would have been entitled to if he had died intestate, except that, even if the husband left no child nor descendant of such, the widow, upon renouncing, shall be entitled to only one-half (1/2) of the real and personal estate of her deceased husband... .
The same right is granted to a surviving husband.
The right to renounce the will of a deceased is to promote the economic welfare of the surviving spouse. Wolcott v. Wolcott, 184 So.2d 381, 382, 383 (Miss. 1966); Estate of Mullins v. Estate of Mullins, 239 Miss. 751, 756, 125 So.2d 93, 95 (1960).
The accepted rule in Mississippi is:
[T]he right of a beneficiary to accept or renounce provisions of a will is a personal privilege which must be exercised by him during his lifetime and may not, after his death, be undertaken by his personal representative, even where death occurs prior to the expiration of the statutory period for the election.
Jenkins v. Borodofsky, 211 So.2d 874, 875 (Miss. 1968) quoting Estate of Mullins, 239 Miss. at 755, 125 So.2d at 95. Exceptions are made, however, for those under legal disabilities. See e.g., Wolcott v. Wolcott, 184 So.2d 381 (Miss. 1966) (A mentally incompetent widow may have election made for her by guardian ad litem with approval of the court even after expiration of the statutory time limitation to renounce spouse's will.)
In both Jenkins and Estate of Mullins, the surviving spouse received property under the will of the deceased spouse, but the provision of the surviving spouse was less than the survivor's share under statute. Both decisions applied Miss.Code 1942 Ann. § 668,[4] which required an election by the survivor.
A similar but distinguishable case was McBride v. Haynes, 247 So.2d 129 (Miss. 1971). In McBride, the will of the testatrix left nothing for the surviving husband who died three weeks after the testatrix without renouncing his wife's will.
In McBride, this Court held that the husband's estate had the right to share in the estate of the deceased wife as a matter of law. Under Miss.Code 1942 Ann. § 669 (1956),[5] renunciation occurred as a matter of law, and no election was required when no provision was made for the surviving spouse.
In the instant case, the will of Robert Tyson left everything for the surviving spouse. Although everything left to Ruth and remaining in her estate is now subject to a constructive trust, during Ruth's lifetime *1081 she was fee simple owner with the right of disposal as she pleased. The purpose of the statute  to promote the economic welfare of the surviving spouse  was carried out.
For those reasons, this Court holds that when the constructive trust was imposed, no revocation occurred as a matter of law and that Ruth's right to renounce under § 91-5-25 was personal to Ruth and abated at her demise.
Ruth having departed this life in 1983, and this Court having determined that Ruth's right to renounce her husband's will was a personal right which did not survive her, the Court finds it unnecessary to consider whether the statute of limitations for renunciation should have been enlarged for the benefit of Ruth's estate.
Finding no reversible error, the Court affirms the chancellor's granting of summary judgment.
AFFIRMED.
WALKER, C.J., ROY NOBLF LEE, P.J., and DAN M. LEE, SULLIVAN, ANDERSON and GRIFFIN, JJ., concur.
HAWKINS, P.J., and ROBERTSON, J., not participating.
NOTES
[1] Referred to hereafter as Ruth's "1953 will."
[2] Harriet's name was subsequently changed to Roberta Alexander Tyson. Reference is made throughout the record to "Roberta" or "Bobbye." For the sake of consistency, this opinion will continue to refer to her as Harriet.
[3] Constructive trusts are created by courts of equity, among other factual situations, whenever title to property is found in one who in fairness ought not to be allowed to retain it. The court merely uses the constructive trust as a method of forcing the defendant to convey to the plaintiff. It treats the defendant as if he had been an express trustee from the date of his unlawful holding. Bogert and Bogert, Handbook of the Law of Trusts § 77 (1973).
[4] Predecessor of Miss. Code Ann. § 91-5-25 (Supp. 1986).
[5] Predecessor of Miss. Code Ann. § 91-5-27 (1972).